UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID M.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

21-CV-00230-LJV
DECISION & ORDER

On February 9, 2021, the plaintiff, David M. ("David"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.*  On January 3, 2022, David moved for judgment on the pleadings, Docket Item 6; on May 25, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on July 6, 2022, David replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] David applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies David's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

David argues that the ALJ erred in two ways. *See* Docket Item 6-1. First, he argues that the ALJ relied on his own lay interpretation of imaging evidence in formulating David's residual functional capacity ("RFC").[4] *Id.* at 6-9. Second, he argues that the ALJ erred in evaluating the opinion evidence and in not reconciling the RFC with an opinion that the ALJ found "persuasive." *Id.* at 9-12. This Court disagrees and therefore affirms the Commissioner's finding of no disability.

### II. ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean

---

[4] A claimant's residual functional capacity ("RFC") is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### A. Imaging Evidence

David first faults the ALJ for "rel[ying] on his own lay interpretation of imaging to determine the RFC."  Docket Item 6-1 at 6.  And the ALJ indeed cited September 2019 radiology reports of David's cervical and lumbar spine x-rays in his decision.  Docket Item 4 at 25.  But contrary to David's argument, there is no reason to believe that the ALJ relied on his own lay interpretation of the imaging to craft the RFC.  In fact, the x-rays themselves are not even in the record, and other than David's *ipse dixit*, this Court can find nothing to suggest that the ALJ interpreted the imaging.

On the contrary, when the ALJ refers to the imaging, he simply repeats—almost verbatim—the findings made by Robert Obedian, M.D., the radiologist who read the x-rays.  *Compare id*. at 25 (ALJ decision) *with id.* at 278-79 (radiology reports).  So there is no reason to believe that the ALJ did anything more than recite what the radiologist found.  Moreover, there is no reason to believe that the ALJ based the RFC on those findings by the radiologist.  Indeed, the ALJ simply cited the x-ray reports as the only

4

"laboratory diagnostic findings of record" and observed that the radiologist's conclusions—that there were no acute bony abnormalities and only mild-to-moderate degenerative changes—did not support David's testimony about the severity of his complaints. See id. at 25.

David may be arguing that the ALJ, as a layperson, exceeded his authority by finding that the absence of bony abnormalities and only mild-to-moderate degenerative changes in both the cervical and lumbar spines were inconsistent with David's testimony about the severity of his symptoms. Stated another way, David may be arguing that a lay ALJ cannot use a radiologist's report of imaging evidence to interpret the severity of a claimant's symptoms. If so, that argument fails for two reasons.

First, the ALJ's had to consider laboratory evidence, such as the radiology reports, to determine whether David's degenerative disc disease met or medically equaled the criteria of listing 1.04 under 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R §§ 404.1526, 416.926. Beyond step three, the ALJ's reference to the radiology reports was more observation than analysis; in essence, the ALJ observed that the radiologist's reports did not confirm that David's symptoms were as severe as he testified. See 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[The Commissioner] will then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence . . . ."). Second, and even more important, the ALJ based the RFC finding not on the radiologist's reports but on the rest of the record, including the medical opinions. See Docket Item 4 at 23-26.

So even if the ALJ erred by observing that the radiologist's reports were inconsistent with David's testimony, that error was harmless.

In fact, in formulating the RFC, the ALJ explicitly relied on the hearing testimony, the medical record, and the opinion evidence.  For example, the ALJ explicitly noted that there is "no evidence of any treatment for [David's] spine during the period at issue" and that David told a consulting examiner "that he had not seen an orthopedist in 'quite some time.'"  *Id.* at 25.  The ALJ addressed David's hearing testimony in considerable detail and gave David's subjective complaints "extreme deference" in finding David's back problems to be "severe."  *See id.* at 24-25.  But the ALJ noted that David's last exam with his treating primary care physician, Esfandiar Mafi, M.D., resulted in "entirely benign clinical findings," including "a normal gait, . . . 'normal' strength in the extremities, . . . full ranges of motion, and . . . no recorded abnormalities in the back."  *Id.* at 25.

Perhaps most important, the ALJ based the RFC on the opinions of three consulting physicians: Despina Isihos, D.O.; V. Baronos, M.D.; and J. Koenig, M.D. *See id.* at 25-26.  He noted that Dr. Baronos and Dr. Koenig both opined that David "could perform a range of light exertional work with frequent balancing and only occasional stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds."  *Id.*  He noted that Dr. Isihos opined that David had a "mild restriction for heavy lifting and carrying as well as repetitive bending and twisting maneuvers."  *Id*. at 25.  And he then crafted an RFC largely consistent with those opinions and explained the "slightly different overall restrictions."  *Id.* at 26.

In sum, contrary to David's first argument, the ALJ did not "rel[y] on his own lay interpretation of imaging to determine the RFC."  *See* Docket Item 6-1 at 6.  On the

contrary, the ALJ determined the RFC based on David's subjective complaints, the medical record, and the opinion evidence. And for that reason, David's first argument lacks merit.

### B. Dr. Isihos's Opinion

David also argues that the ALJ erred by failing to "reconcile the RFC with the opinion from Dr. Isihos after finding it persuasive." Docket Item 6-1 at 9. Again, this Court disagrees. In fact, the ALJ's slight departure from Dr. Isihos's opinion is supported by substantial evidence in the record, as the ALJ explained in some detail.

In September 2019, Dr. Isihos performed a consultative examination to assess David's physical impairments. Docket Item 4 at 274-277. Dr. Isihos found that David had normal gait, the ability to squat fully, and a normal stance; Dr. Isihos also noted that David was able to rise from a chair without difficulty; walked on his heels and toes without difficulty; needed no help getting on and off the exam table; and appeared to be in no acute distress. *Id.* at 275. Other than David's complaints of pain during lumbar spine range-of-motion testing, the musculoskeletal exam was entirely benign with full range of motion in the cervical and lumbar spine. *Id.* at 276. And as noted above, David told Dr. Isihos that "he ha[d] not [] seen an orthopedic physician in quite some time." *Id.* at 274. Based on his examination, Dr. Isihos opined that David had only "a mild restriction for repetitive bending and twisting maneuvers and heavy lifting and carrying." *Id.* at 277.

The ALJ found Dr. Isihos's assessment to be "generally persuasive" but adopted "slightly different overall restrictions." *Id.* at 26. More specifically, the ALJ accepted Dr.

Isihos's lifting and carrying restrictions but found David to be less limited for repetitive bending and twisting than opined by Dr. Isihos.  *See id.*  And the ALJ the explained why.

For example, the ALJ noted that the medical exams showed "no demonstrated range of motion deficits, spasm, instability, weakness, or sensory abnormalities."  *Id.*  In particular, the ALJ noted that Dr. Mafi found that David "walked with normal gait, displayed 'normal' strength in the extremities, had full ranges of motion, and had no recorded abnormalities in the back."  *Id.* at 25.  Likewise, he noted Dr. Baronos's and Dr. Koenig's opinions "that [] [David] could perform a range of light exertional work with frequent balancing and only occasional stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds."  *Id.* at 25-26.  The ALJ found that no objective evidence supported "any limitations in balance as [David] has no[t] demonstrated deficits in coordination, motor function, or equilibrium."  *Id.* at 26.  And he therefore found that it was unnecessary to incorporate Dr. Isihos's "vague[]" opinion about "'mild' restrictions for repetitive bending and twisting maneuvers" into the RFC.  *Id.*

The ALJ did not err in that assessment of Dr. Isihos's opinion.  The ALJ cited specific medical and opinion evidence supporting his conclusions, *id.* at 25-26, and he explained how evidence in the record supported "slightly different overall restrictions" than those found by Dr. Isihos, *see id.*  Because the ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," and because the RFC need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *see Matta*, 508 F. App'x at 56, there was no error here.

8

Moreover, David has not suggested how his RFC was actually more restricted than what the ALJ determined. As noted above, the RFC limited David to light work with additional restrictions for climbing, kneeling, crouching, and crawling. *See* Docket Item 4 at 23. Indeed, as the ALJ noted, because he "afford[ed] extreme deference to [David's] complaints and safety considerations," in some respects the RFC was more restrictive than what the opinion evidence recommended. *See id.* at 26 (finding "greater restriction than opined by the consultants, such that [David] can only occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds or work at unprotected heights"). David has not shown how his RFC was more restricted than the RFC determined by the ALJ, and his second argument fails for that reason as well. *See* 20 C.F.R §§ 404.1512(a)(1), 416.912(a)(1) ("In general, [the claimant] ha[s] to prove to [the Commissioner] that [he or she] [is] blind or disabled."); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so.").

At its core, David's second argument boils down to a disagreement with how the ALJ weighed the evidence in the record in determining his RFC, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [David] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). And for that reason, this Court cannot and will not second guess the ALJ's RFC determination. *Matta*, 508 F. App'x at 56.

9

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, David's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 7, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   August 14, 2023
         Buffalo, New York

                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE